Claire McDONALD, et al.,
Plaintiffs, Appellees,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant,
Appellant.

Nos. 86–1288, 86–1359.

United States Court of Appeals,
First Circuit.

July 17, 1986.

Sec. Litigation, and A. George Lowe, Chief, Disability Litigation Branch, were on brief, for appellant.

Sarah F. Anderson with whom Sandra Smales, Greater Boston Legal Services, Linda L. Landry, Neighborhood Legal Services, and Laura Rosenthal, Massachusetts Law Reform Institute, were on brief, for appellees.

Before CAMPBELL, Chief Judge, and COFFIN and TORRUELLA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

In this class action, applicants for social security disability insurance benefits challenge two regulations promulgated by the Secretary of Health and Human Services. First, the applicants challenge "Step 2" of the Secretary's sequential evaluation process, under which the Secretary may deny disability benefits if he determines that the applicant's impairment is not "severe." Second, they challenge the Secretary's policy prior to December 1, 1984, of not considering the combined effects of multiple impairments in determining whether an applicant was disabled. The district court found that both of these policies were invalid. It accordingly enjoined the Secretary from applying the regulations and ordered him to redetermine class members' eligibility for benefits. We vacate in part, affirm in part, and remand.

## I. BACKGROUND

The Old Age Survivors and Disability Insurance ("OASDI") and Supplemental Security Income ("SSI") disability programs provide for the payment of benefits to persons who are disabled within the meaning of the Social Security Act. For both programs, a claimant is considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A)

Etzion Brand, Office of the General Counsel, Social Sec. Div., with whom William F. Weld, U.S. Atty., Marianne B. Bowler, Asst. U.S. Atty., Donald A. Gonya, Chief Counsel for Social Sec., Randolph W. Gaines, Deputy Chief Counsel for Social

(1982).[1] A person is to be considered disabled only if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, *considering his age, education, and work experience,* engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A) (emphasis added).

Since 1978, the Secretary of Health and Human Services has implemented this definition of disability by applying a five-step sequential inquiry into whether or not an applicant for benefits should be considered "disabled" and thus eligible for benefits. 20 C.F.R. § 404.1520 (1985). First, the Secretary determines whether the claimant is currently engaged in "substantial gainful activity"; if so, then a "not disabled" finding is warranted. Second, in the step at issue in the instant case, the Secretary must determine whether the claimant has a "severe" condition or impairment, *i.e.,* one that "significantly limits his or her physical or mental ability to perform basic work-related functions." If the claimant's impairment is "non-severe," then he or she is considered not disabled, without any consideration of age, education, or work experience, and without any further consideration of steps three through five.

If the claimant's impairment is deemed severe, then the evaluation proceeds to the third step. At this stage, the claimant's impairment is evaluated in light of certain listed impairments. If the impairment is equivalent to one of those listed, the claimant is automatically considered disabled.

If not, then under Step 4 the Secretary will determine whether the claimant is able to do his or her past work. If the claimant can perform past work, a not disabled finding results. Finally, and only if none of the other steps in the process warrants a finding of either disability or non-disability, the claimant's age, education, and work experience are considered, along with his or her residual functional capacity, to determine whether there is other work in the national economy that the claimant can perform. If such work does exist, the claimant is not considered disabled; if it does not, the claimant is disabled.

In 1980, the Secretary amended the disability regulations to provide, for the first time, that in determining disability, he would not consider the combined effects of unrelated impairments at the Step 2 severity stage unless all of the impairments were severe. 20 C.F.R. § 404.1522 (1981). Congress specifically overruled this policy of the Secretary in its 1984 amendments to the Social Security Act, which became effective on December 1, 1984. 42 U.S.C. § 423(d)(2)(C) (Supp.1984). The Secretary has considered the combined effects of impairments since that date, *see* 20 C.F.R. § 404.1523 (1986), but has refused to redetermine the claims of those applicants who alleged multiple impairments prior to December 1, 1984.

Plaintiffs, consisting of all Massachusetts disability applicants who have been or will be denied benefits on the ground that they do not have a severe impairment,[2]

---

**1.** Title 42 U.S.C. §§ 401 *et seq.* (1982 and Supp. 1984) and the regulations codified at 20 C.F.R. §§ 404.1 *et seq.* (1986) pertain to the OASDI program under Title II of the Social Security Act. Title 42 U.S.C. §§ 1381 *et seq.* (1982 and Supp.1984) and the regulations codified at 20 C.F.R. §§ 416.101 *et seq.* (1986) pertain to the SSI program under Title XVI of the Act. For all purposes relevant to the present opinion—*viz.,* the definition of disability, the sequential evaluation procedure generally (*see* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920), and the severity step and combination requirement in particular (*see* 20 C.F.R. §§ 404.1520(c), 404.1521–.1523; 20 C.F.R. §§ 416.920(c), 416.921–.923)—the statutory and regulatory schemes for the two programs are identical. For simplicity, we shall

refer in this opinion to the OASDI statute and regulations only.

**2.** As certified by the district court, the class is defined as follows:

All persons residing in Massachusetts who have filed or will file applications for disability benefits under Title II or Title XVI of the Social Security Act, and whose benefits have been or will be denied on the grounds that they do not have a severe impairment, pursuant to the policies set forth in 20 C.F.R. §§ 404.1520(c), 404.1521, 404.1522, 416.920(c), 416.921, and 416.922 and Social Security Rulings cum. ed. 82–55 and 82–56 (1982). *McDonald v. Heckler,* 612 F.Supp. 293, 299 (D.Mass.1985). Thus, the class includes those

brought the present class action, challenging both the severity test for determining eligibility for disability benefits, and the policy of the Secretary of not redetermining the claims of those claimants whose non-severe multiple impairments were not considered in combination prior to December 1, 1984, the effective date of the 1984 amendments to the Social Security Act.

On motion for summary judgment, the United States District Court for the District of Massachusetts held that the Step 2 severity regulation is "inconsistent with the Social Security Act" and thus "invalid as written." *McDonald v. Heckler*, 624 F.Supp. 375, 380 (D.Mass.1985). It accordingly enjoined the Secretary from further enforcing the Step 2 rules and regulations and ordered her to redetermine the eligibility of class members without consideration of Step 2.

In a separate order, the district court further granted summary judgment in favor of plaintiffs in their challenge to the Secretary's policy regarding the combination of impairments. It directed the Secretary to consider the combined effect of non-severe impairments when evaluating, on remand pursuant to the court's previous order, the claims for disability benefits of those class members who received a final decision from the Secretary prior to December 1, 1984. *McDonald v. Heckler*, 629 F.Supp. 1138, 1139–40 (D.Mass.1986).

We shall consider the Step 2 regulation and the combination requirement in turn.

## II. THE SEVERITY REGULATION

The Step 2 "severity" test has been a controversial aspect of the sequential evaluation process promulgated in 1978. The Secretary describes it as follows:

(c) *You must have a severe impairment.* If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience....[3]

20 C.F.R. § 404.1520(c) (1986).

Critics contend that the application of this regulation has improperly and unfairly increased the number of claimants who are denied benefits based entirely on the purported medical non-severity of their impairment, without any consideration of the effect of the impairment on their ability to perform gainful activity. To date, ten courts of appeals other than our own have addressed the validity of the Step 2 regulation. Five have held the regulation invalid on its face, on the ground that the Social Security Act does not permit a finding of non-disability based on medical factors alone, without consideration of vocational factors. *Baeder v. Heckler*, 768 F.2d 547 (3d Cir.1985); *Johnson v. Heckler*, 769 F.2d

claimants who have not exhausted their administrative remedies. It does not, however, include those claimants who failed to meet the requirements of 42 U.S.C. § 405(g) (1982) that they apply to the next administrative level within 60 days of receiving a decision at an earlier level, or that they file a court action within 60 days after receiving a final decision of the Secretary. *Id.* at 299. Similarly, it does not include those claimants who have received a final court decision. *Id.*

**3.** A "non-severe impairment" is defined in 20 C.F.R. § 404.1521 (1986) as follows:

**§ 404.1521 What we mean by an impairment(s) that is not severe.**

(a) *Non-severe impairment(s).* An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.

(b) *Basic work activities.* When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

1202, *reh'g denied by an equally divided court,* 776 F.2d 166 (7th Cir.1985); [4] *Brown v. Heckler,* 786 F.2d 870 (8th Cir.1986); *Yuckert v. Heckler,* 774 F.2d 1365 (9th Cir.1985), *cert. granted,* —— U.S. ——, 106 S.Ct. 1967, 90 L.Ed.2d 652 (1986); *Hansen v. Heckler,* 783 F.2d 170 (10th Cir.1986). The five remaining courts have upheld the regulation, but only if applied as a *de minimis* policy designed to screen out totally frivolous claims. *Chico v. Schweiker,* 710 F.2d 947, 954–55 n. 10 (2d Cir. 1983); *Evans v. Heckler,* 734 F.2d 1012 (4th Cir. 1984); *Stone v. Heckler,* 752 F.2d 1099 (5th Cir.1985); *Farris v. Secretary of Health and Human Services,* 773 F.2d 85 (6th Cir.1985); *Brady v. Heckler,* 724 F.2d 914 (11th Cir.1984). The Supreme Court recently stepped into the controversy when it granted *certiorari* in *Yuckert,* indicating that by the end of the next Term the present controversy should be resolved once and for all.

This court recently addressed the Step 2 regulation in *Andrades v. Secretary of Health and Human Services,* 790 F.2d 168 (1st Cir.1986), and *Munoz v. Secretary of Health and Human Services,* 788 F.2d 822 (1st Cir.1986). In each case, the Secretary had denied benefits on the ground that the applicant's impairment was not severe, and the district court affirmed. We vacated both judgments, and remanded the cases to the Secretary for reconsideration in light of Social Security Ruling 85–28, which had recently been promulgated by the Secretary to interpret the severity regulation. We strongly suggested in each case that we considered the Step 2 regulation, as interpreted by the Secretary in Ruling 85–28, to be a valid *de minimis* screening device. Today we make that suggestion explicit.

We find no indication that Congress intended to preclude the Secretary from using medical factors alone to screen out applicants whose impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment.[5] Because the Step 2 regulation, as currently construed by the Secretary in Ruling 85–28, constitutes no more than such a *de minimis* screening policy, we hold that it is valid.

### A. Validity of a De Minimis Screening Policy

■ Critics of the Step 2 regulation treat the Social Security Act as rigidly requiring the Secretary to evaluate an applicant's age, education, and work experience in every case, no matter how weak a showing of physical impairment the applicant makes. The Act, however, goes no further than to say that a person shall be considered disabled if "his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). We find this language consistent with the Secretary's requiring a claimant to make a reasonable threshold showing that the impairment is one which could conceivably keep him or her from working. On at least three occasions Congress has indicated that the Secretary need not consider vocational factors when the impairment is so slight that it could not possibly affect a claimant's ability to work regardless of his or her age, education, or work experience.

The concept of "disability" was added to the Social Security Act in 1954 in connection with provisions granting rights to individuals who became totally disabled. *See* Pub.L.No. 761, § 106(d), 68 Stat. 1052, 1080

---

**4.** *But see Bunch v. Heckler,* 778 F.2d 396, 398–401 & n. 4 (7th Cir.1985) (limiting scope of *Johnson* decision and upholding denial of benefits at severity stage).

**5.** We note that "[w]here, as here, the statute expressly entrusts the Secretary with the responsibility for implementing a provision by regula-

tion, [judicial] review is limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious." *Heckler v. Campbell,* 461 U.S. 458, 466, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66 (1983) (footnote omitted).

(1954). In the legislative history to the 1954 amendment, Congress indicated that a medical severity threshold was appropriate:

There are two aspects of disability evaluation: (1) There must be a *medically determinable impairment of serious proportions* which is expected to be of long-continued and indefinite duration or to result in death, and (2) there must be a present inability to engage in substantial gainful work by reason of such impairment. . . . The physical or mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the cause of failure to obtain any substantial gainful work.

S.Rep.No. 1987, 83d Cong., 2d Sess., *reprinted in* 1954 U.S. Code Cong. & Ad. News 3710, 3730 (emphasis added). The 1954 definition was largely incorporated into Section 223 of the Act (42 U.S.C. § 423) in 1956.

In 1967 Congress, reacting to judicial decisions that expanded the scope of individuals considered "disabled," amended the Act by adding paragraph 2(A), 42 U.S.C. § 423(d)(2)(A), which explicitly refers to the "age, education, and work experience" of a claimant. The Senate Report accompanying the bill pointed out that:

The original provision [defining disabilty] was designed to provide disability insurance benefits to workers who are so severely disabled that they are unable to engage in any substantial gainful activity. The bill would provide that such an individual would be disabled *only if it is shown that he has a severe medically determinable physical or mental impairment or impairments;* that if, despite his impairment or impairments, an individual still can do his previous work, he is not under a disability; and that if, considering the severity of his impairment together with his age, education, and experience, he has the ability to engage in some other type of substantial gainful work that exists in the national economy even though he can no longer do his previous work, he is also not under a disability. . . .

S.Rep.No. 744, 90th Cong., 1st Sess., *reprinted in* 1967 U.S. Code Cong. & Ad. News 2834, 2882 (emphasis added).

The debate underlying the 1984 amendments to the Act again made it clear that some sort of threshold requirement of medical severity was appropriate. The Conference Committee explicitly stated:

The conferees also believe that in the interests of reasonable administrative flexibility and efficiency, a determination that an individual is not disabled may be based on a judgment that an individual has no impairment, or that the medical severity of his impairments is slight enough to warrant a presumption, *even without a full evaluation of vocational factors,* that the individual's ability to perform SGA [substantial gainful activity] is not seriously affected. The current "sequential evaluation process" allows such a determination and the conferees do not intend to either eliminate or impair the use of that process. . . .

H.R.Rep.No. 1039, 98th Cong., 2d Sess. 30, *reprinted in* 1984 U.S. Code Cong. & Ad. News 3080, 3088 (emphasis added). *See also* H.R.Rep.No. 618, 98th Cong., 2d Sess. 8, 14, *reprinted in* 1984 U.S. Code Cong. & Ad. News 3038, 3045, 3051 (House Ways and Means Committee Report); S.Rep.No. 466, 98th Cong., 2d Sess. 22 (1984) (Senate Finance Committee Report).

We conclude, in light of these rather clear indications of congressional intent stretching over three decades, that the Secretary is not precluded from implementing a threshold test of medical severity to screen out groundless claims—*i.e.,* those claims that, on a common sense basis, would clearly be disallowed were vocational factors to be considered. The question then becomes whether the Step 2 regulation announces a screening policy of sufficiently restricted scope or whether, as plaintiffs contend, it denies benefits to some claimants whose impairments leave them unable to perform either their past work or other substantial gainful activity.

### B. *The Severity Regulation as a De Minimis Policy*

■ As early as 1960, the Secretary issued regulations permitting the denial of benefits based on medical considerations alone. The 1960 regulations read, in pertinent part, as follows:

> Whether or not an impairment in a particular case constitutes a disability ... is determined from all the facts of that case. Primary consideration is given to the severity of the individual's impairment. Consideration is also given to such other factors as the individual's age, education, training and work experience. However, *medical considerations alone may justify a finding that the individual is not under a disability where the only impairment is a slight neurosis, slight impairment of sight or hearing, or similar abnormality or combination of slight abnormalities.*

20 C.F.R. § 404.1502(a) (1961) (emphasis added). This regulation was reenacted in substantially similar form in 1968, after the 1967 amendments to the Act added the vocational factors in paragraph 2(A). *See* 20 C.F.R. § 404.1502(a) (1969).

In 1978, the foregoing language was replaced by the severity regulation at issue here. At the time the Secretary introduced the five-step sequential inquiry for determining disability, he stated that the introduction of the terms "severe" and "not severe" was "not intended to alter the levels of severity for a finding of disabled or not disabled on the basis of medical considerations alone, or on the basis of medical and vocational considerations." 43 Fed. Reg. 9284, 9296–97 (1978). It appears, however, that the promulgation of the new regulations led to a larger number of applicants being denied benefits based on medical factors alone. The court in *Baeder v. Heckler*, 768 F.2d at 552, cited one House of Representatives report indicating that in 1975, pursuant to the 1968 regulations, only 8.4 percent of applicants were denied disability benefits based solely on medical

factors. By 1982, under the sequential procedure, more than 40 percent of applicants were apparently denied benefits without consideration of vocational factors. According to the affidavit of a social security administrator presented by plaintiffs below in the instant case, the figures for Massachusetts applicants were similar: some 25 to 31.4 percent of claims at all administrative levels were denied in 1984 and 1985 because the claimant did not have a "severe impairment."

These figures tend to bear out plaintiffs' contention that, whatever the Secretary may have intended in 1978, the severity regulation has become, in practice, more than a *de minimis* screening device. Were it not for the recent issuance of Social Security Ruling 85–28, we would be faced with the difficult question of whether the system of case-by-case judicial review provided in the Social Security Act is sufficient protection against what, according to some, has been a deliberately illegal construction of the Secretary's regulations.

Ruling 85–28, however, was issued in October 1985 in response to the considerable judicial criticism of the severity regulation. Its announced purpose was "[t]o clarify the policy for determining when a person's impairments may be found 'not severe' and, thus, the basis for a finding of 'not disabled' in the sequential evaluation of disability[.]"

Whatever the Secretary's *sub rosa* policy may have been prior to October 1985, he could not have made it clearer than he does under Ruling 85–28 that the Step 2 severity requirement is hereafter to be a *de minimis* policy, designed to do no more than screen out groundless claims. Under the ruling, a finding of "non-severe" is only to be made where "medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered...." The im-

pairment must be such that a finding of non-disability would necessarily result even if the vocational factors were considered. As the ruling states, "even if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA [substantial gainful activity]."

In our view, the new ruling places the Secretary's interpretation of the Step 2 regulation in line with that of all of the courts that have been called upon to assess the validity of the regulation.[6] The Secretary specifically adopts the admonition of the *Baeder* court that the regulation do no "more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." *Baeder*, 768 F.2d at 553. If, however, "evidence shows that the person cannot perform his or her past relevant work because of the unique features of that work," denial at the not severe stage is inappropriate.[7] Further, the ruling emphasizes that:

Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

The Secretary has thus made it absolutely clear that he interprets the severity regulation as no more than a *de minimis* policy that will not result in the denial of benefits to an applicant who either cannot perform his or her own past work, or cannot perform other substantial gainful activity. Social Security Rulings are binding on all Social Security Administration personnel, including state agency adjudicators, administrative law judges, and the Appeals Council. 20 C.F.R. § 422.408 (1986). Thus, all SSA personnel are bound to apply the severity regulation as it is interpreted in Ruling 85–28. We believe that this interpretation is in accord both with the language of the Act and with congressional intent.[8]

6. Ruling 85–28 was called to the attention of the Eighth, Ninth and Tenth Circuits prior to their decisions regarding the validity of Step 2. The Eighth Circuit in *Brown* did not discuss the ruling in holding the regulation invalid. The Ninth Circuit in *Yuckert* expressed no view on the validity of the ruling because it had not yet been published, and because "the regulation it interprets is inconsistent with the Social Security Act." *Yuckert*, 774 F.2d at 1369 n. 6. The Tenth Circuit in *Hansen* discussed Ruling 85–28, but, like the Ninth Circuit in *Yuckert*, found that even under the ruling the Secretary's position "remains at odds with our holding that a showing of inability to do past work shifts the burden to the Secretary to perform the individualized assessment that step two avoids." *Hansen*, 783 F.2d at 175. This conclusion apparently resulted from reading Ruling 85–28 in conjunction with Ruling 82–56, which has since been superseded by Ruling 86–8. As the discussion in the text and in footnote 8 indicates, under the terms of both Ruling 85–28 and Ruling 86–8, a finding of not severe is inappropriate if the claimant is unable to do his or her past work.

7. Thus, for example, while we can imagine that the partial loss of a finger might be considered a "non-severe" impairment, as it would have little

impact on an individual's ability to perform any basic work activities, it might be considered a severe impairment if there was evidence that the claimant was a professional piano player. As the ruling states, "[t]he inability to perform past relevant work in such instances warrants further evaluation of the individual's ability to do other work considering age, education, and work experience."

8. Plaintiffs contend that the language of Ruling 85–28 conflicts with that of Ruling 82–56, which permits denial of benefits "even though [the impairment] may prevent the individual from doing work that the individual has done in the past." Ruling 82–56 has now been superseded by Ruling 86–8, which adopts much of its language regarding severity from Ruling 85–28. In particular, Ruling 86–8 provides that a denial at the "not severe" step is inappropriate if the individual is unable to perform past relevant work.

In the district court, plaintiffs also challenged the use of Ruling 82–55, which provided a list of impairments considered per se non-severe. Ruling 82–55 was "obsoleted without replacement" by Ruling 85–III–II, and is therefore not an issue on appeal.

. We therefore vacate the injunction issued by the district court barring the Secretary from applying the Step 2 severity regulation [9] and requiring him automatically to reopen the claims of all members of the class certified by the district court. The disability cases of the named plaintiffs are remanded to the district court for any action in their pending individual review petitions as may be appropriate, including determination (in review petitions properly before the court) of whether the proper standards, as set forth in Ruling 85–28 and this opinion, were applied by the Secretary when their claims were denied as not severe. *See Andrades v. Secretary of Health and Human Services,* 790 F.2d 168 (1st Cir.1986). Because we assume that the Secretary will hereafter endeavor to apply the proper standards at the severity stage, we shall expect all claimants, including those who were members of the class certified by the district court, who have not yet exhausted their administrative remedies to do so before seeking review in the district court.

### III. COMBINATION OF IMPAIRMENTS

■ The 1984 amendments to the Social Security Act added a new subparagraph to section 223, specifically requiring the Secretary to consider in determining whether a claimant is disabled the combined effect of all of a claimant's impairments.[10] 42 U.S.C. § 423(d)(2)(C) (Supp.1984). The

amendment explicitly reversed the Secretary's policy of refusing to consider the combined effects of unrelated impairments at the severity stage of the sequential evaluation process unless all of the claimant's impairments were severe. 20 C.F.R. § 404.1522 (1981). The Secretary has abided by the amendment for all claims decided since December 1, 1984, the amendment's effective date. 20 C.F.R. §§ 404.1522, 404.-1523 (1986).

Plaintiffs in the present case challenged the Secretary's policy of refusing to consider the combined effects of impairments prior to December 1, 1984, claiming that the policy was in violation of the Act even before the amendment. The Secretary contended that the amendment created for the first time the requirement that impairments be combined. The district court ruled that the Secretary's prior policy was invalid, and ordered the Secretary to redetermine the claims of class members who received a final decision denying them benefits prior to that date. *McDonald v. Heckler,* 629 F.Supp. 1138, 1139–40 (D.Mass.1986).

Since 1967, the Social Security Act has required the Secretary to find a claimant disabled "if his physical or mental impairment *or impairments* are of such severity that he is not only unable to do his previous work, but cannot ... engage in any other kind of substantial work." 42 U.S.C. § 423(d)(2)(A) (emphasis added). A physi-

---

**9.** Plaintiffs make several additional challenges to the severity regulation, none of which has merit. For example, they contend that the regulation shifts the burden of proof in disability cases. As the discussion in the text makes clear, however, under the Step 2 regulation a showing by a claimant that she cannot do her former work continues to constitute a prima facie case. Similarly, plaintiffs' argument that the Secretary should have been required to publish the social security rulings interpreting the regulation prior to issuance is meritless. Publication is only required for substantive rules; the rulings, and particularly Ruling 85–28, merely provide the Secretary's interpretation of substantive rules. Neither the rulings nor the regulation itself were issued in violation of the Administrative Procedure Act.

**10.** The amendment reads as follows:

In determining whether an . individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Secretary shall consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Secretary does find a medically severe combination of impairments, the combined impact of such impairments shall be considered throughout the disability determination process.

42 U.S.C. § 423(d)(2)(C) (Supp.1984).

cal or mental impairment is defined as one that results from *"abnormalities* which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). By its very terms, then, the statute speaks in terms of multiple impairments or abnormalities.

The first set of regulations implementing this definition similarly spoke in terms of multiple impairments, and recognized that an individual could be disabled by one impairment or by a combination of impairments. *See* 20 C.F.R. § 404.1501(a)(1) (1969); 20 C.F.R. § 404.1502(a), (b), (c) (1969). As the Supreme Court has observed, the "contemporaneous administrative construction of [a statute] is persuasive evidence of the original understanding[.]" *United States v. Sheffield Board of Commissioners,* 435 U.S. 110, 131, 98 S.Ct. 965, 979, 55 L.Ed.2d 148 (1978).

It was not until 1980 that the Secretary first promulgated regulations providing that he would "consider the combined effects of unrelated impairments only if all are severe[.]" 20 C.F.R. § 404.1522 (1981). Perhaps because the statutory history weighs so heavily in favor of plaintiffs, the Secretary rests his case on the rather remarkable argument that the very congressional act that overruled his policy at the same time implicitly validated it, because Congress in passing the 1984 amendment never specifically stated that the Secretary's policy was contrary to the Act. We, like the Seventh Circuit in *Johnson v. Heckler,* 769 F.2d 1202, 1213–15 (7th Cir. 1985), find little merit to this contention.

The Secretary explained the rationale of his refusal to consider the combination of impairments as follows:

Inasmuch as a non-severe impairment is one which does not significantly limit ba-

sic work-related functions, neither will a combination of two or more such impairments significantly restrict the basic work-related functions needed to do most jobs.

Social Security Ruling 82–55. We find it difficult to follow the Secretary's reasoning. As one court phrased it, "[i]n much the same way, a mathematician might prove that because two does not equal four, two plus two never equals four either." *Dixon v. Heckler,* 589 F.Supp. 1494, 1508 (S.D.N.Y.1984). It seems simply a matter of common sense that various physical, mental, and psychological defects, each non-severe in and of itself, might in combination, in some cases, make it impossible for a claimant to work. The Social Security Act has long recognized this, and until 1980, so did the Secretary.

The order of the district court invalidating the Secretary's policy prior to December 1, 1984 of not considering the combined effects of non-severe impairments is affirmed. *Accord Johnson v. Heckler,* 769 F.2d at 1213; *Bowen v. Heckler,* 748 F.2d 629, 634–35 (11th Cir.1984); *Felshina v. Schweiker,* 707 F.2d 71, 73 (2d Cir.1983); *Burman v. Schweiker,* 682 F.2d 456, 458 (3d Cir.1982).

*Affirmed in part, vacated in part, and remanded for further proceedings not inconsistent herewith.*