915 F.2d 1556
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Domingo SANTIAGO SERRA, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 90-1066.
 United States Court of Appeals, First Circuit.
 Sept. 10, 1990.
 
 Appeal from the United States District Court for the District of Puerto Rico, Juan M. Perez-Gimenez, District Judge.
 Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief, for appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose Vazquez Garcia, Assistant United States Attorney, and Robert M. Peckrill, Assistant Regional Counsel, Department of Health and Human Services, on brief, for appellee.
 D.P.R.
 AFFIRMED.
 Before BREYER, Chief Judge, and CAMPBELL and TORRUELLA, Circuit Judges.
 PER CURIAM.
 
 
 1
 Domingo Santiago Serra (the claimant) appeals from a district court judgment affirming a decision by the Secretary of Health and Human Services to deny his application for Social Security disability benefits. We find substantial evidence in support of the Secretary's determination and therefore affirm.
 
 
 2
 Claimant was born in 1925 and completed the tenth grade. His employment history includes stints as a laborer, factory machine operator, and baker; most recently he has worked as a supervisor in a municipal public works department (1974-1977) and as a self-employed cafeteria operator (1980-1981). His cafeteria business went bankrupt in 1981 and claimant has not worked since. He later filed an application for disability benefits, alleging an inability to work since October 25, 1981 on account of, inter alia, a nervous condition.[1] Following a hearing, the Administrative Law Judge (ALJ) found that claimant did indeed suffer from a depressive disorder, but that it was nonsevere in nature. He therefore denied claimant's application at step two of the evaluative sequence--a determination which was subsequently endorsed by the Appeals Council and the district court. The sole issue on appeal is whether this finding is supported by substantial evidence.
 
 
 3
 A claimant has the burden at step two of establishing that he has a medically "severe" impairment--one that "significantly limits" his physical or mental ability to perform "basic work activities."[2] 20 C.F.R. Sec. 404.1520(c); see also id. Sec. 404.1521(a). This requirement is "designed to do no more than screen out groundless claims," McDonald v. Secretary of Health and Human Services, 795 F.2d 1118, 1124 (1st Cir.1986), and a claimant thus need only make a de minimis showing that his impairment is severe enough to interfere with his ability to work. See, e.g., Bowen v. Yuckert, 482 U.S. 137, 153 (1987). A claim may be denied at this level only where the "medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." Social Security Ruling 85-28, quoted in McDonald, 795 F.2d at 1124; accord, e.g., Barrientos v. Secretary of Health and Human Services, 820 F.2d 1, 2 (1st Cir.1987). Moreover, benefits may not be denied at this stage "if a disability, whatever its level of severity, leaves a claimant unable to perform his or her past relevant work." Andrades v. Secretary of Health and Human Services, 790 F.2d 168, 171 (1st Cir.1986).
 
 
 4
 By our count, the record contains written assessments of claimant's mental condition by eleven medical professionals: seven psychiatrists, one psychologist, and three physicians of unknown specialty. In both his district court and appellate briefing, claimant has relied on the evaluation of only one of these doctors--one whose opinion the ALJ expressly discounted. To be sure, that evaluation--submitted by Dr. Cubano, a psychiatrist and claimant's treating physician--strongly supports claimant's allegations. Dr. Cubano submitted four reports prior to the expiration of claimant's insured status on September 30, 1984 and a fifth one in 1985. Each followed an examination of claimant and each, in nearly identical fashion, painted a dire picture of his mental state. Claimant was described as depressed, irritable, partially disoriented in time and place, and intolerant of stress or criticism, and was said to be suffering from poor judgment, poor memory and concentration, impaired intellectual functioning, auditory hallucinations, social withdrawal, and ideas of worthlessness and low self-esteem. One report mentioned his being delusional with ideas of persecution, while another made reference to suicidal ideation. The diagnosis in each report was the same: severe depressive neurosis, r/o (rule out) schizophrenia simple type. The prognosis was described as guarded to poor, therapy was said to be of minimal benefit, and claimant was depicted as unable to handle funds and in need of constant supervision.
 
 
 5
 The remaining medical evidence stands in stark contrast to Dr. Cubano's evaluation. Claimant received treatment in December 1981 from the Veterans Administration for a plethora of complaints. One physician diagnosed an anxiety reaction with multiple somatizations. A second described claimant as mildly depressed over the loss of his business, but coherent, in fair contact with reality, and not actively hallucinatory. He was oriented in the three spheres, with fair memory, intelligence and judgment, and without suicidal or homicidal ideation. Claimant was also examined on August 22, 1983 by Dr. Lopez Flores, a consulting psychiatrist, who painted a mixed picture. He found claimant to be cooperative and in contact with reality, but with a sad and anxious affect, suffering from irritability, crying spells, and multiple somatic complaints. Concentration and attention span were below par. Memory was good for recent events but poor for remote events; immediate recall was also affected. Judgment and insight were poor. Claimant was oriented in person and place, but not in time. There were no hallucinations or suicidal ruminations. Dr. Lopez diagnosed a minor dysthymic disorder and described the prognosis as good.[3]
 
 
 6
 The record also contains assessments of claimant's residual functional capacity (RFC) from three psychiatrists and one psychologist.[4] In September 1983, Dr. Diaz Quinones described claimant's mental condition as "significant" but reported limitations only on his ability to understand and carry out complex or detailed job instructions; claimant's abilities to carry out simple instructions, to interact with supervisors and coworkers, to deal with the public, and to maintain attention and concentration were each described as unlimited. Two months later, another psychiatrist, Dr. Maria Quinones, reported identical functional limitations, describing claimant's condition as moderate. In May 1986, based on his review of the record through December 1984, Dr. Rivera de Hurtado reported that claimant was suffering from no medically determinable impairment at all. And in November 1986, based on his review of the record through September 1984, Dr. Garcia, the psychologist, reported that claimant was suffering from an affective disorder of a nonsevere nature. In ratings adopted by the ALJ, he found that claimant was only "slightly" limited in his daily living activities, "slightly" limited in maintaining social functioning, "seldom" limited in concentration, persistence, or pace, and "never" subject to episodes of deterioration in work-like settings. Dr. Garcia also characterized the Cubano reports as unreliable, contending that they simply parroted claimant's subjective complaints rather than setting forth independent findings, and contending also that they were at odds with contemporaneous accounts of claimant's mental condition.[5]
 
 
 7
 From this evidence, and from his observations of claimant at the hearing,[6] the ALJ found that claimant had a depressive disorder characterized by anxiety, depression and somatic complaints. He further found that claimant's ability to perform basic work-related activities was not significantly limited, and that his ability to perform his past relevant work was unimpaired. He therefore concluded that claimant's mental condition was not severe. Although the question is a close one, we think these findings are supported by substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).
 
 
 8
 A treating physician's opinion is not entitled to greater weight than those of other examining or consulting physicians. See, e.g., Rodriguez Pagan v. Secretary of Health and Human Services, 819 F.2d 1, 3 (1st Cir.1987) (per curium), cert. denied, 484 U.S. 1012 (1988); Gonzalez-Ayala, 807 F.2d 255, 256 (1st Cir.1986) (per curiam). And the Cubano reports here not only were sharply at odds with the other medical evidence, but were expressly discounted by another physician. The ALJ was therefore warranted in discrediting Dr. Cubano's evaluation and relying on the remaining evidence. The other examining physicians all rendered diagnoses or findings consistent with a mild dysthymic disorder. And the RFC assessments reported no functional impairments that would significantly limit claimant's ability to perform basic work activities. The two RFC's prepared in 1983 found that claimant was limited only in his ability to understand complex or detailed job instructions; as mentioned above, see note 2 supra, a claimant need only be able to understand simple instructions in order to do basic work activities. And the two RFC's prepared in 1986 were fully consistent with a finding of nonseverity. Indeed, on the basis of Dr. Garcia's ratings of the degree of functional loss (slight, slight, seldom and never), the regulations permit the Secretary to "generally conclude that the impairment is not severe." 20 C.F.R. Sec. 404.1520a(c)(1); see, e.g., Figueroa-Rodriguez v. Secretary of Health and Human Services, 845 F.2d 370, 372-73 (1st Cir.1988).
 
 
 9
 For these reasons, we think the Secretary was justified in concluding that the claim here "would clearly be disallowed were vocational factors to be considered" and that it was therefore groundless. McDonald, 795 F.2d at 1123.
 
 
 10
 Affirmed.
 
 
 
 [1]
 Claimant's application also referred to a back condition and a heart ailment. The Secretary found no significant limitations in either regard, however, and claimant has not challenged this determination on appeal
 
 
 [2]
 Examples of the mental aptitudes necessary to perform basic work activities include the following: (1) understanding, carrying out, and remembering simple instructions; (2) use of judgment; (3) responding appropriately to supervision, co-workers and usual work situations; and (4) dealing with changes in a routine work setting. 20 C.F.R. Sec. 404.1521(b)
 
 
 [3]
 Claimant also received psychiatric examinations from the Veterans Administration in 1985, in connection with a hernia operation, and in 1987 following a whiplash accident. Although outside the relevant time frame, these reports are noteworthy in their documentation of an ongoing minor dysthymic disorder. The 1985 report found a depressed mood with multiple somatic complaints and poor judgment, but otherwise indicated claimant was oriented in the three spheres with no hallucinations or suicidal ideation. The 1987 report largely echoed these findings
 
 
 [4]
 An additional evaluation, resembling in some respects an RFC assessment, also is on record. In February 1982, two months after claimant's first VA treatment, a consulting physician (whose name is illegible in the record) characterized claimant's mental condition as no more than "slight" in severity, found the limitations on his daily activities to be "mild," and concurred in the VA diagnosis of an anxiety reaction
 
 
 [5]
 Dr. Garcia pointed particularly in this regard to reports of interviews with claimant by examiners at the District Office. On four occasions in 1982 and 1983, during the time Dr. Cubano was reporting a severe depressive neurosis, these examiners reported no difficulties in claimant's ability to speak and understand and described him as depressed but logical, coherent, and able to follow instructions and pursue a train of thought
 
 
 [6]
 The ALJ described claimant at the hearing as "properly dressed, representing his stated age, logic[al], coherent, relevant, in contact with [his] surroundings, well oriented, with good memory.... He disclosed some tension and preoccupation, but he was cooperative without any drawn features or discomfort."