**Reginald SHEFFIELD, Plaintiff,**

v.

**John J. CALLAHAN, Acting Commissioner of the Social Security Administration, Defendant.**

**Civil Action No. 96–12378–GAO.**

United States District Court,
D. Massachusetts.

July 15, 1998.

76

*MEMORANDUM AND ORDER*

O'TOOLE, District Judge.

The plaintiff Reginald Sheffield appeals from a final decision of the Commissioner of the Social Security Administration denying his application for disability benefits. He applied for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act on January 9, 1992, claiming that his disability began on December 1, 1987. His original application alleged disability on the grounds of drug dependency and high blood pressure. (Ex. 1, R. at 130.) The Social Security Administration denied the application both on initial review and then upon reconsideration. On July 22, 1993, an Administrative Law Judge ("ALJ") determined that the plaintiff was not disabled within the meaning of the Social Security Act and could return to his past work. (Ex. 30, R. at 246–54.) After an appeal, the Appeals Council remanded the case to the ALJ for an evaluation of additional medical and psychological evidence. (Ex. 37, R. at 284–86.) The ALJ held another hearing on May 2, 1995, at which the plaintiff, his representa-

tive, and a vocational expert testified. On August 30, 1995, the ALJ issued a second decision finding the plaintiff not disabled. (R. at 21–35.) The ALJ concluded that, while Sheffield could not return to his past relevant work, he had a residual functional capacity to perform a number of jobs in the national economy, precluding a finding of eligibility for disability benefits. Sheffield again appealed this decision, but this time the Appeals Council denied Sheffield's request for review of the hearing decision, thereby making it the final decision of the Commissioner. (R. at 6–7.)

The plaintiff appealed this final decision to this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Before the Court are cross-motions to reverse, and alternately to affirm, the Commissioner's decision. Finding that the administrative record substantially supports the decision and that no errors of law were made, the Court now affirms the Commissioner's determination.

## FACTUAL BACKGROUND

Reginald Sheffield, a forty-four year old man with a high school diploma and approximately two years of education at the University of Massachusetts, applied for SSI benefits in 1992 claiming disability based upon drug dependency and multiple physical impairments. He last attempted to work as a bus driver/monitor for individuals with special needs in 1989. Prior to that he had worked as a sky cap for an airline.

The medical evidence before the ALJ spans the period from 1990 to 1995 and includes office notes and reports of evaluations from a number of the claimant's treating and examining physicians and other health professionals. The medical assessments may be summarized as follows:

Dr. David Cahan reported in 1990 that Sheffield suffered from a "history of high blood pressure which was exacerbated by intermittent use of Cocaine." He noted that while Sheffield could walk and climb stairs normally, he could only lift and carry approximately ten to fifteen pounds. Dr. Cahan reported that Sheffield's hypertension "is reasonably well controlled" and that in an "appropriate work setting he would be able

to respond appropriately to co-workers and work pressures." (Ex. 13, R. at 191–92).

In December of 1990 the plaintiff underwent a mental status evaluation by Dr. Michael Bohnert, who found the plaintiff to be "irritable" and "standoffish," but that he had a "normal stream of mental activity" and his thought was "coherent and goal directed." (Ex. 14, R. at 196.) He diagnosed the plaintiff as having a severe opiate dependence along with a probable mixed personality disorder with borderline and antisocial features. (*Id.* at 197.)

In January and June of 1992 social worker Lisa Morse of the Addiction Treatment Center of New England submitted letters to the Massachusetts Rehabilitation Commission which described Sheffield's participation in the addiction treatment and methadone maintenance program and which described him as being aware of his behavior and largely willing to talk in his counseling sessions. However, Ms. Morse also observed that the plaintiff often used anger to intimidate people and to get his own way. (Ex. 19, R. at 209–10).

Several physicians examined the plaintiff in 1992 for the Disability Determination Services ("DDS") of the Massachusetts Rehabilitation Commission in order to evaluate his physical and mental health. Dr. Robert Sharpley's diagnostic impression was that Sheffield suffered from "personality disorder with antisocial and schizotypal [sic] features; depressive reaction; [and] opiate dependence." (Ex. 20, R. at 213.) He also found Sheffield to be well groomed and neat, noting that he was "dressed very modishly or stylishly" and was "neat, clean, well-shaven." He observed that Sheffield was "generally hostile and defensive in nature; however, he was cooperative and polite in my interview." (*Id.* at 212.)

Dr. Amy Edalji also examined Sheffield as a consulting physician in February 1992. She noted that his chief complaints were a "history of known hypertension ... and long-standing history of intravenous drug abuse resulting in cellulitis and ulcers on the right forearm." (Ex. 21, R. at 215.) Her examination found most of the plaintiff's vital signs to

be in the normal range and noted that his hypertension appears to be under moderate control with the present therapy. She did, however, conclude that he suffered from "[i]ntravenous drug abuse" and a "[h]istory of chronic alcoholism." (*Id.* at 217.)

The plaintiff received medical care from Dr. Paul J. Utz beginning in November 1992. Dr. Utz reported that the plaintiff had poorly controlled blood pressure; lower back pain caused by hypertrophy of the facet joint at the L4–5 region resulting in a limitation of his ability to pick up heavy objects and do manual labor; ulnar neuropathy in his right arm, requiring that he wear a sling; and drug abuse limiting his ability to work at a steady job and to participate in substantial gainful activity. Otherwise, however, Dr. Utz noted that Sheffield had "an excellent capacity to understand" and that he appeared to be "quite intelligent." Overall, Dr. Utz opined that the plaintiff had a moderate physical impairment because of his back pain and problem with his right arm, but that his need to make multiple clinic visits while enrolled in the methadone program would make it hard for him to be gainfully employed. (Ex. 28, R. at 239–40.)

In December of 1993, psychologist Emrie A. Cohen examined the plaintiff and diagnosed him as having a moderate panic disorder with mild agoraphobia, as well as severe drug dependency, early onset of secondary dysthymia, personality disorder with borderline features, borderline intellectual functioning, high blood pressure, migraine headaches, numbness in his right arm, seizures, and heart flutters. (Ex. 34, R. at 276–77.) Cohen noted that Sheffield expressed signs of anxiety and that he tended to be impulsive and careless, particularly on written work. (*Id.* at 273.) She concluded that "he would find it Markedly to Extremely difficult to respond to customary work stresses because of his highly impulsive nature which causes him to be a careless worker who gives up easily, as well as one who is very easily upset and put on the defensive." (*Id.* at 276.)

Dr. Richard Han began seeing the plaintiff in August 1993. Dr. Han's impression was that the patient had "several impairments which would make it extremely difficult for him to find gainful employment in the setting of his social circumstances and educational training." (Ex. 38, R. at 287.) Like Dr. Utz, Dr. Han determined that Sheffield suffered from "chronic lower back pain" making it difficult for him to lift and carry heavy objects. In addition, he determined that he suffered "from a significant right ulnar neuropathy with possible right median nerve involvement" limiting "his ability to perform tasks requiring fine motor coordination with his right hand such as manipulating small objects and hammering or screwing in small nails or screws." Additionally, Dr. Han determined that the plaintiff suffered from a significant anxiety disorder that might "make it difficult for him to interact with co-workers and patrons." (*Id.* at 288.) Finally, Dr. Han noted that the plaintiff's history of polysubstance abuse severely limited his ability to obtain gainful employment. (*Id.*)

On January 19, 1995, Dr. Stuart Gitlow conducted a psychiatric examination of Sheffield. Dr. Gitlow's principal diagnosis was "methadone dependence," and "alcoholism" but largely ruled out a diagnosis of "major depressive disorder." (Ex. 41, R. at 293.) Dr. Gitlow described Sheffield as "pleasant" and "cooperative" as well as "well-organized" and "logical." (*Id.* at 292.)

Wallace W. Varonko performed a psychological evaluation of Sheffield in January 1995. According to Varonko, Sheffield was somewhat "angry and hostile" and "showed signs of distractibility and preoccupation" with the various tasks he was given during the interview. (Ex. 42, R. at 295.) Varanko described the plaintiff as a man of approximately average native ability, who performed poorly on tests because of "[i]nconsistencies of attention and effort." (*Id.* at 296.)

Dr. R. Roger Komer conducted a physical examination of the plaintiff on January 25, 1995. Dr. Komer diagnosed the plaintiff as suffering from moderate hypertension under moderate control, chronic alcoholism and abuse of intravenous drugs, and chronic anxiety and depression. (Ex. 43, R. at 306.)

The plaintiff testified extensively about his impairments at the administrative hearings held before the ALJ. His responses to ques-

tions were generally vague and uncertain and sometimes contradictory. A typical response to questions posed him by the ALJ regarding his capacity to perform basic tasks was that sometimes he could do them and sometimes he could not. For example, when asked whether he had trouble with his memory he replied, "Sometimes." (R. at 62.) He responded similarly to his ability to follow simple instructions and to carry out tasks that he is given on a regular basis. (*Id.*)

Two vocational experts also testified at the hearings: James Scozelli at the first hearing held in 1993 and Stephen Duclos at the last of the hearings held in 1995. The plaintiff's representative and the ALJ both posed various hypothetical questions to these vocational experts in order to determine whether there were jobs in the national economy that Sheffield would be able to perform given his various physical and mental impairments. In the second hearing, based on a hypothetical question posed by the ALJ, Duclos testified that there were jobs in the national economy that the plaintiff could obtain and perform adequately.

## LEGAL DISCUSSION

 A social security claimant aggrieved by a final decision of the Commissioner to deny him benefits may seek review of the decision in the United States District Court for the district in which he resides. 42 U.S.C. § 405(g). Under the Social Security Act, a person may be considered disabled when he demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In reviewing cases where the Commissioner has found a claimant "not disabled" under the statute, the Court does not make *de novo* determinations. *Lizotte v. Secretary of Health & Human Servs.*, 654 F.2d 127, 128 (1st Cir.1981). Instead, the District Court must determine whether there is substantial evidence in the record to support the decision of the Secretary. (*Id.* at 128.) "It is the responsibility of the Secretary to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the Secretary, not the courts." *Ortiz v. Secretary of Health and Human Services*, 955 F.2d 765, 769 (1st Cir. 1991) (citing *Rodriguez v. Secretary of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981)).

The plaintiff here contends that the ALJ erred in three respects. First, he argues that the ALJ's finding that Sheffield had no significant nonexertional limitation is not supported by the substantial evidence in the record. Second, the plaintiff contends that the ALJ failed to consider the combined effect of Sheffield's mental and physical impairments on his ability to perform basic work. Finally, the plaintiff says that the ALJ's hypothetical question to the vocational expert that failed to include the claimant's mental functional limitations led to an opinion that was incomplete and that could not be relied on by the ALJ for his conclusion about the plaintiff's residual functional capacity. After review, the Court finds all three arguments unpersuasive and affirms the decision of the Commissioner denying benefits.

### 1. Lack of Substantial Evidence.

 The plaintiff argues that the ALJ erred in determining that the plaintiff suffered from "no significant nonexertional limitations." (R. at 30.) Nonexertional limitations include those limitations and restrictions that relate to the ability to meet the demands of a job other than the strength demands, such as functional limitations due to anxiety or depression, difficulty maintaining concentration and attention, understanding and remembering detailed instructions, and other mental demands required to work. 20 C.F.R. § 416.969a(c). The plaintiff alleged a range of mental and emotional limitations, many of which appear to stem from his drug dependency. These included depression, anxiety, agoraphobia, irritability and impatience, and some memory loss. The ALJ "concluded that the [plaintiff] suffers from a generalized anxiety disorder with depression and a personality disorder with mixed and schizotypical fea-

tures." (R. at 27.) However, he determined that the only finding of possible functional limitation concerned impaired concentration and attention but that "the severity of this limitation [was] not at a significant level." (*Id.*) While there is evidence in the record which could support a finding that the plaintiff had some mental impairment in mental functioning, there is also evidence to support the ALJ's conclusion that any impairment was not "significant." Despite many references in one-time evaluations to the presence of a personality disorder, anxiety, or depression, the plaintiff never apparently received any therapy for any such disorders, except for the treatment of his drug dependency. It appeared that the plaintiff was sometimes angry, hostile or defensive and at other times polite and cooperative. When anger, impatience and antagonism are the signs of bad manners and when they are the product of pathology calls for an essentially evaluative judgment on the evidence. Here, the medical evidence was equivocal; there certainly was no consensus as to the significance or severity of any of such conditions. In light of the ambiguity of the evidence, the ALJ's judgment that any mental disorder did not rise to the significance of a nonexertional limitation must be respected. It can be rejected only if it does not fall within a range of acceptability on the record evidence. Here the ALJ's finding of no nonexertional impairments is within that range, and it consequently must be left undisturbed, "even if the record arguably could justify a different conclusion." *Pagan v. Secretary of Health and Human Services*, 819 F.2d 1, 3 (1st Cir.1987).

■ It should be noted that the plaintiff's drug dependency cannot form the basis for a finding of disability. In 1996 the Congress amended the Social Security Act to preclude the award of disability benefits based on alcoholism or drug addiction. 42 U.S.C. § 423(d)(2)(C) now reads:

An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

This amendment went into effect on March 29, 1996, and applies to any individual whose claim was finally adjudicated after the date of the enactment of the Act. An action is not considered "finally adjudicated" if it is before the agency or in federal court as of the date the amendments were enacted as this case was. Therefore, the restriction applies here.

■ Having decided that the evidence did not support any significant level of functional impairment, the ALJ proceeded to evaluate the claimant's testimony pursuant to the standards set out in *Avery v. Secretary of Health and Human Servs.*, 797 F.2d 19 (1st Cir.1986), requiring the ALJ to consider the degree to which the claimant's subjective experience of pain and other symptoms might result in additional limitation on the ability to perform substantial, gainful activity. It appears that the ALJ appropriately weighed those factors and determined that the plaintiff's subjective complaints of functional restrictions were not credible. Such factual findings are best left in the hands of the ALJ who had the opportunity to question and observe the plaintiff himself at the disability determination hearing. "The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health and Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987).

*2. Failure to Consider Combined Effect of Physical and Mental Impairments.*

The plaintiff's second argument is that the ALJ failed to consider Sheffield's various impairments in combination as required. The Secretary's regulations provide that, "[w]e will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process." 20

C.F.R. § 416.923. The reason for requiring an ALJ to consider a claimant's impairments together was aptly explained by the First Circuit: "It seems simply a matter of common sense that various physical, mental, and psychological defects, each non-severe in and of itself, might in combination, in some cases, make it impossible for a claimant to work." *McDonald v. Secretary of Health and Human Servs.*, 795 F.2d 1118, 1127 (1st Cir. 1986).

In this case, the ALJ was clear to state that the combination of mental impairments did not result "in any significant level of functional impairment." (R. at 27.) In substance, the ALJ concluded that there was no mental impairment for him to add to the physical impairments and drug dependency in evaluating the plaintiff's residual functional capacity. Because that factual judgment stands, it was not erroneous to omit consideration of the "combination." In this case, the combination was identical to the physical limitations.

### 3. Failure to Pose Proper Hypothetical Question to the Vocational Expert.

Finally, the plaintiff alleges that the ALJ's hypothetical question to the vocational expert at the 1995 hearing was factually and legally flawed because it failed to ask the witness to assume the functional limitations associated with Sheffield's mental impairment(s). The plaintiff argues that the ALJ ignored the evidence that he [Sheffield] has mental impairments that functionally limit his ability to concentrate and to respond to customary work stresses. But that is not the case. The ALJ did not ignore that evidence, but rather, having considered it, discounted it and concluded that any mental impairments did *not* result in a functional limitation.

Furthermore, the plaintiff's representative had a full opportunity at the hearing to ask the vocational expert any hypothetical question she deemed appropriate. At the hearing, the ALJ asked the representative, "[D]o you want to try giving Mr. Duclos some assumptions? You can include just the physical or the physical and the emotional or whatever you think is justified from the record." (R. at 119.) Later, before dismissing the vocational expert, the ALJ inquired of the plaintiff's representative, "Anything else we want to give Mr. Duclos?" to which she responded, "No, Your Honor." (R. at 125.) It is clear that the ALJ himself did not think it necessary to include in the hypothetical question an assumption about a "fact" that he considered irrelevant by virtue of its not being a "fact." Nonetheless, he gave the plaintiff's representative the opportunity to frame alternate hypotheticals. There was no error in this respect.

### CONCLUSION

For the foregoing reasons, the plaintiff's motion to reverse the decision of the Commissioner of Social Security is DENIED and the defendant's motion to affirm the decision of the Commissioner is GRANTED.

IT IS SO ORDERED.