815 F.2d 702
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edward S. CASEY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-3267.
 United States Court of Appeals, Sixth Circuit.
 March 6, 1987.
 
 Before KEITH, KRUPANSKY, and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant, Casey, appeals from the district court judgment affirming the decision of the Secretary of Health and Human Services denying disability benefits under the Social Security Act due to his failure to establish a severe impairment. For the reasons which follow, the district court's decision is vacated and remanded for further proceedings in accordance with this opinion.
 
 I.
 
 2
 Casey filed his application for disability benefits on May 13, 1983, alleging disability since November, 1982, due to cancer of the colon and penis, and circulation problems. It is undisputed that claimant's last date of insured status was December 31, 1983. Casey's application for benefits was denied initially and on reconsideration and, upon his request, a hearing was conducted on January 20, 1984. The evidence adduced before the administrative law judge (ALJ) was as follows.
 
 A. Claimant's Medical Reports
 
 3
 Casey was fifty-eight years of age at the time of the hearing. He quit high school to join the Navy and later completed his schooling by correspondence course. He had last worked in 1980 in park maintenance and had otherwise worked as a laborer in a variety of jobs prior to that time. He lost his job as a park maintenance worker after he was required to spend three months taking care of an elderly aunt in Cincinnati. Thereafter, having no relatives and nowhere to live, he was taken in at the Veterans Administration Domiliciary in Dayton, Ohio, where he has lived since July, 1981.
 
 
 4
 Claimant's records at the VA indicate an initial diagnosis that included chronic alcoholism. Claimant reported long term abuse of alcohol and difficulty relating comfortably with others. Pain in Casey's right leg was diagnosed as claudication, secondary to vascular disease and, despite treatment, he continued to complain of difficulty walking. His initial psychological screening evaluation indicated that his Psychological Screening Inventory profile "was essentially within normal limits, with perhaps a slight tendency to have difficulty comfortably relating to other people." Claimant was referred to the Ohio Bureau of Employment Services for help in initiating his job search. Although Casey subsequently applied for training as a chef through the CETA program, he was denied admittance due to his failure of the entry test. However, he did participate in an incentive program at the Domiciliary in which he worked up to twenty hours per week sorting and delivering messages and mail to other residents, and checking doors to make sure they were properly secured. He was paid between forty and sixty dollars per month for this work, which he was still performing at the time of the hearing.
 
 
 5
 Claimant sought treatment in January of 1983 for a penile lesion. Biopsies performed in February and March, 1983, indicated the presence of a precancerous condition requiring surgery. At about the same time, Casey developed complaints of rectal bleeding; a subsequent biopsy confirmed a diagnosis of well-differentiated invasive adenocarcinoma. Casey was hospitalized at the VA hospital from March 26 through April 26, 1983, for surgical removal of the penile lesion and an abdominal perineal resection with a colostomy. His medical records during his hospitalization indicated claimant was "slightly nervous but otherwise appears to be in good health" and his mental status was described as "depressed and very anxious about his hospitalization."
 
 
 6
 Claimant continued to complain of abdominal pain following his discharge from the hospital. In July of 1983, he was again hospitalized for repair of a large ventral incisional hernia. Surgical records show that he tolerated the procedure well, was released to the Domiciliary two weeks later in good condition, was taking Tylenol 2 with codeine for pain, and was to avoid any strenuous activity.
 
 
 7
 Claimant was examined by Martin Fritzhand, M.D., on December 16, 1983. At that time, his complaints included gastrointestinal distress, nausea, and shortness of breath. Physical examination indicated that the C/P diameter was increased and breath sounds were slightly distant, although rales and rhonchi were absent. The dorsalis pedis pulses were absent, leading Dr. Fritzhand to conclude that Casey's peripheral vascular status was diminished and that he probably had some element of peripheral vascular insufficiency. He further noted that Casey's incisional hernia repair "was modified by inability to place mesh in the fascial plane [apparently due to the location of his colostomy stoma], and this certainly inhibits him from lifting more than 5 lbs. or from performing activities requiring bending or stooping." While Dr. Fritzhand diagnosed Casey as having chronic obstructive pulmonary disease, he indicated that the results of his pulmonary function studies were "probably within normal limits." Dr. Fritzhand concluded that claimant's "tolerance for standing, walking, stooping, bending, lifting and sitting is poor. His overall functional capacity for work related activities is thus quite diminished."
 
 
 8
 Casey was examined by Eugene D. Chambers, Ph.D., on December 17, 1983, and January 7, 1984. Dr. Chambers administered a complete battery of psychological tests. Dr. Chambers' diagnoses included dysthymic disorder, alcoholism (chronic and only partially limited control); psychological problems affecting physical disorders; phobic disorder and personality disorder, mixed type, combining elements of passive dependent and paranoid personality disorder; personality deterioration related to chronic alcoholism.
 
 Dr. Chambers concluded:
 
 9
 I do not feel this client is capable of sustaining the stresses and pressures of day to day work demand without regression, frank depression or less controlled recurrence of alcohol problems. He is unable to deal with people effectively within an open work situation and it is highly questionable that he could carry out routine repetitive work activities persistently without intensified conflict resulting in increased depression or alcohol abuse.
 
 
 10
 B. Claimant's testimony.
 
 
 11
 Claimant testified before the ALJ that he has difficulty walking and cannot lift anything "to amount to anything." He can sit for no more than one and one half hours and can stand only twenty minutes. He stated that he could lift 10-20 lbs., but that he was not supposed to do such lifting. Further, he wears a brace for his hernia twenty-four hours a day. He played bingo once a week and attempted to read or do crossword puzzles, although he had difficulty concentrating on these tasks. He takes public transportation to the local VFW once or twice per week for approximately three hours, where he often drinks up to eight cans of beer. He does not drive.
 
 
 12
 With regard to his job at the Domiciliary, claimant indicated that the work is neither daily nor mandatory; if he did not feel up to working, he was permitted to go to his room to rest. He testified that he must stop and rest or go to his room three or four times per week, and that he rests for two hours each afternoon. Moreover, he stated he had recently begun to worry about the least little thing and was depressed. In response to questioning by both his attorney and the ALJ, claimant indicated that he could probably do a job similar to his job at the VA on a full-time basis, although he later qualified this statement as referring to the optional nature of that job and his ability to stop and rest or quit working at his discretion.
 
 II.
 
 13
 Based on the foregoing, the ALJ made the following findings relevant to this appeal:
 
 
 14
 3. The claimant has the following impairment(s): mild residuals from bowel and hernia surgery, mild shortness of breath, probably due to smoking, a slight degree of claudication in the legs, mild situational anxiety, and controlled alcoholism.
 
 
 15
 4. The claimant's testimony was reasonably credible.
 
 
 16
 5. The claimant does not have any impairment or impairments which significantly limit his ability to perform basic work-related activities; therefore, the claimant does not have a severe impairment (20 C.F.R. 404.1521).
 
 
 17
 In so ruling, the ALJ found that the reports of Drs. Chambers and Fritzhand, who indicated that the claimant's physical and mental difficulties were of disabling proportions, "must be and are disregarded as insubstantial and conclusory inasmuch as they are not supported by the reported clinical or laboratory diagnostic data or findings.... In the instant case, there is no underlying medical basis for finding a severe impairment or any combination of severe impairments which have lasted or can be expected to last for twelve continuous months...." App. at 20 (emphasis added).
 
 
 18
 The Appeals Council accepted one additional medical report from the claimant, a report by Dr. Paul Larson, Acting Chief of the VA Psychology Service, dated May 4, 1984. Dr. Larson administered a battery of objective psychological tests, including the Weschler Adult Intelligence Scale-Revised, Minnesota Multi-Phasic Personality Inventory (MMPI), Shipley Institute of Living Scale, and Psychological Screening Inventory. Based on results of these tests, Dr. Larson concluded that:
 
 
 19
 Mr. Casey's marginal performance on his current constructive assignment, which entails little stress, strongly indicates that it is unlikely he would be able to maintain competitive gainful employment in even a relatively routine and unskilled labor position....
 
 
 20
 It is recommended that Mr. Casey remain at the VA Center. The structured environment here will help him to minimize his drinking, and provide a more ready source of treatment when slips do occur. Also, with his level of anxiety and nervousness, it is unlikely that he would be able to live in the community without considerable distress.... Current levels of emotional functioning precludes any gainful employment at this time. His prognosis for improvement is guarded to poor.
 
 
 21
 Although the Appeals Council noted that it had considered this additional evidence, it found no basis for changing the ALJ's decision.[1]
 
 
 22
 Casey advances two arguments on appeal: that the Secretary improperly found that his impairment, or combination of impairments, was not severe, and that the Secretary improperly rejected uncontradicted evidence of a severe disabling psychological impairment. Because we agree that the Secretary erred in finding claimant's impairments non-severe, it is unnecessary to address Casey's alternate argument.
 
 III.
 
 23
 As always, when supported by substantial evidence, the findings of fact of the Secretary are conclusive, and a decision denying benefits cannot be overturned. 42 U.S.C. Sec. 405(g). Substantial evidence means more than a mere scintilla of evidence. There must be "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938); Kirk v. Secretary of Health and Human Services, 667 F.2d 524 (6th Cir.1981). Substantiality must also be based on the record "as a whole." Allen v. Califano, 613 F.2d 139 (6th Cir.1980). This court is, therefore, charged to review the record in its entirety to determine if the finding of ineligibility was supported by substantial evidence.
 
 
 24
 It is Casey's contention that the Secretary erred in requiring that his impairment(s) significantly limit his ability to perform basic work related activities. He points out that this Court, in Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir.1985), held that:
 
 
 25
 [A]n overly stringent interpretation of the severity requirement would violate the statutory standard for disability by precluding administrative determination of the crucial statutory question: whether, in fact, the impairment prevents the claimant from working, given the claimant's age, education, and experience. We therefore agree with the Eleventh Circuit's view in Brady that in order to ensure consistency with statutory disability standards, an impairment can be considered as not severe, and the application rejected at the second stage of the sequential evaluation process, only if the impairment is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." 724 F.2d at 920.
 
 
 26
 Id. at 89-90. Casey's main contention is that his psychological impairment alone constitutes a severe impairment which precludes discharge of his case at step two of the sequential process. However, he also argues that the totality of his impairments (psychological problems, claudication of the right leg, rectal cancer and its attendant colostomy, the ventral hernia, and chronic alcoholism) when considered in combination, "clearly create more than a slight abnormality which would have minimal effect on [his] ability to perform basic work activities." We agree.
 
 IV.
 
 27
 Under the sequential disability evaluation procedure promulgated by the Secretary and codified at 20 C.F.R. 404.1520, the statutory test for disability is broken down into a five step inquiry. An initial determination is made as to whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is found "not disabled." Second, the ALJ must find that the claimant has a severe impairment or impairments. A severe impairment is defined in the negative; 20 C.F.R. Sec. 404.1521 states that a nonsevere impairment is one that "does not significantly limit [the claimant's] physical or mental abilities to do basic work activities." If the claimant does not have a severe impairment, he is found "not disabled."
 
 
 28
 We note that, at the time of claimant's disability determination by both the ALJ and the Appeals Council, the Secretary was enforcing a policy decision, as set forth in 20 C.F.R. Sec. 404.1522, that unrelated impairments would not be combined in determining whether an applicant suffered from a "severe" impairment.[2]
 
 
 29
 In this case, it is apparent that the ALJ considered each of claimant's ailments separately and, finding each one individually "not severe," terminated his inquiry at step two without consideration of whether or not claimant was able to perform his past relevant work or any other work.
 
 
 30
 This circuit has expressly upheld the Secretary's sequential evaluation process, including the necessity of finding a "severe" impairment at step two of the analysis. Salmi v. Secretary of Health and Human Services, 774 F.2d 685 (6th Cir.1985); Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir.1985). Although we upheld the regulation's validity, we interpreted it as requiring only a de minimus threshold showing of severity:
 
 
 31
 An impairment qualifies as non-severe only if the impairment would not affect a claimant's ability to work regardless whether the claimant was sixty years old or only twenty-five, whether the claimant had a sixth grade education or a master's degree, whether the claimant was a brain surgeon, a factory worker, or a secretary. We hold that an impairment qualifies as non-severe only if, regardless of a claimant's age, education, or work experience, the impairment would not affect the claimant's ability to work.
 
 
 32
 Salmi, 774 F.2d at 691-92.
 
 
 33
 With respect to the issue of combining non-severe impairments in reaching a determination on disability, the First Circuit, in McDonald v. Secretary of Health and Human Services, 795 F.2d 1118 (1st Cir.1986), pointed out that the Secretary's regulations as early as 1960 required a finding of no severe impairment only where the impairment "is a slight neurosis, slight impairment of sight or hearing, or similar abnormality or combination of slight abnormalities." 20 C.F.R. Sec. 404.1502(a) (1961) (emphasis added). However, regulations in effect from 1980 through 1984 ostensibly permitted the Secretary to combine impairments only when all were deemed "severe."[3] The Secretary explained the rationale for this change in policy as follows:
 
 
 34
 Inasmuch as a non-severe impairment is one which does not significantly limit basic work-related functions, neither will a combination of two or more such impairments significantly restrict the basic work-related functions needed to do most jobs.
 
 
 35
 Social Security Ruling 82-55.[4] We agree with the McDonald court's observation that "[i]t seems simply a matter of common sense that various physical, mental, and psychological defects, each non-severe in and of itself, might in combination, in some cases, make it impossible for a claimant to work. The Social Security Act has long recognized this, and until 1980, so did the Secretary." 795 F.2d at 1127.
 
 
 36
 The 1984 amendments to the Social Security Act added a new subparagraph to Sec. 223 which explicitly requires the Secretary to consider the combined effects of all of a claimant's impairments in making a disability determination.[5] This amendment reversed the Secretary's policy of refusing to consider the combined effects of unrelated impairments at the severity stage of the sequential evaluation process unless each impairment was severe.
 
 
 37
 Despite the fact that the effective date of the amendment was December 1, 1984, it is clear that the amendment was intended only to "clarify the original interpretation of Congress that non-severe impairments must be combined to determine whether a disability exists." Johnson v. Heckler, 769 F.2d 1202, 1213 (7th Cir.1985), cert. filed, February 27, 1986. Subsequently, the Secretary issued Social Security Ruling 85-28 in October of 1985 stating that the two step severity requirement would thereafter be a de minimus policy designed to do no more than screen out groundless claims. Therefore, we find the most appropriate course of action to be to VACATE the decision of the district court and REMAND this case to the Secretary for reconsideration in light of the 1984 amendments to the Act and Social Security Ruling 85-28.
 
 
 
 [1]
 The magistrate initially ordered this case remanded to the Secretary for further consideration by the Appeals Council of the report of Dr. Larson, which had initially been summarily treated by the Council. Claimant, however, opposed this remand and asked that the magistrate proceed with his evaluation and issuance of the report and recommendation. The magistrate did so, noting in his report and recommendation that "[p]laintiff appears to be content with the Appeals Council's broadly worded rejection of the evidence."
 
 
 [2]
 The relevant portion of pre-1984 Sec. 404.1522 stated: "We will consider the combined effects of unrelated impairments only if all are severe and expected to last 12 months." (Emphasis added). The regulation, as amended, now reads:
 (b) Concurrent Impairments. If you have two or more concurrent impairments which, when considered in combination, are severe, we must also determine whether the combined effect of your impairments can be expected to continue to be severe for 12 months.
 (Emphasis added).
 
 
 [3]
 See supra note 2
 
 
 [4]
 As one court phrased it, "[i]n much the same way, a mathematician might prove that because two does not equal four, two plus two never equals four either." Dixon v. Heckler, 589 F.Supp. 1494, 1508 (S.D.N.Y.1984)
 The Secretary issued Social Security Ruling 82-55 which purported to list impairments which were, by definition, non-severe. The examples given in SSR 82-55 of per se non-severe impairments include, inter alia, osteoarthritis corroborated by x-ray findings with the symptoms of pain and stiffness, hypertension, history of chest pain, colostomy, peptic ulcer, chronic liver disease, chronic renal disease, diabetes mellitus, epilepsy, and IQ of 80 or greater. The ruling emphasizes a national, generic concept of the level of health required for most jobs; "to be found disabled, an individual must have a severe medically determinable impairment. That standard cannot be satisfied by any impairment(s) that is compatible with the ability to perform basic work-related functions as required in most of the numerous jobs in the national economy." Social Security Ruling 82-55 was "obsoleted without replacement" by Ruling 85-III-II. McDonald, 795 F.2d at 1125 n. 8.
 
 
 [5]
 The amendment reads as follows:
 In determining whether an individual's physical or mental impairment or impairments are of sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Secretary shall consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Secretary does find a medically severe combination of impairments, the combined impact of such impairments shall be considered throughout the disability determination process.
 42 U.S.C. Sec. 423(d)(2)(C) (Supp.1984).