Israel LOPEZ VARGAS, Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY, Defendant.

No. 05–2271 (DRD).

United States District Court,
D. Puerto Rico.

Aug. 7, 2007.

Raymond Rivera–Esteves, Juan Hernandez Rivera & Assoc., San Juan, PR, for Plaintiff.

Jose M. Pizarro–Zayas, United States Attorney's Office, San Juan, PR, for Defendant.

### AMENDED OPINION AND ORDER NUNC PRO TUNC

DANIEL R. DOMINGUEZ, District Judge.

On December 8, 2005, plaintiff, Israel Lopez Vargas, filed a complaint pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. 405(g) requesting the Court to review the final decision of the Social Security Administration wherein the disability benefits requested by the Plaintiff were denied on April 1, 2001, affirmed by the appointed Administrative Law Judge on October 24, 2003, and affirmed by the Appeals Council on November 8, 2005. (Docket No. 2). Plaintiff alleges that the decision rendered is not in accordance with

the law, nor the evidence and contrary to the facts. Pending before the Court is the adjudication of the instant case. For the reasons stated below in this order, the Court hereby **AFFIRMS** the Administrative Law Judge's decision. Therefore, Plaintiff's claims are hereby **DISMISSED.**

## I. STANDARD OF REVIEW

 Section 205(g) of the Social Security Act, *supra*, provides *inter alia*, that "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing" and that "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." (*Emphasis ours*). In Social Security cases, the Court must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error. *See Manso–Pizarro v. Secretary of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir.1996) (*citing Sullivan v. Hudson*, 490 U.S. 877, 885, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989)). The Commissioner's factual findings are conclusive if based on substantial evidence in the record. *See* 42 U.S.C.A. §§ 405(g), § 1383(c)(3); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999)(The Commissioner's findings are not conclusive "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quotation omitted*). **However, in reaching the disability determination, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evi-**dence." *See Irlanda Ortiz v. Secretary of Health and Human Servs.*, 955 F.2d 765, 769 (1st Cir.1991) (*emphasis ours*); *see also Richardson*, 402 U.S. at 399, 91 S.Ct. 1420. The resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the ALJ, not for the doctors or for the reviewing Courts. *See Richardson*, 402 U.S. at 399, 91 S.Ct. 1420 (When the Courts are presented with "the not uncommon situation of conflicting medical evidence. . . . [it is for] . . . [t]he trier of fact[s] . . . to solve . . .".) (*emphasis ours*); *see also Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981) (Although the Court found that the "other medical evidence in the record conflicted with" one of the doctors conclusions, it stated that "the resolution of such conflicts in the evidence is for the [ALJ]." Therefore, the Court stated that the decision had to "affirm the Secretary's resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.") (*emphasis ours*) *citing Lizotte v. Secretary of Health and Human Services*, 654 F.2d 127, 128 (1st Cir.1981); *Alvarado v. Weinberger*, 511 F.2d 1046, 1049 (1st Cir.1975) (per curiam).

 Therefore, the standard of review of the Commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso–Pizarro*, 76 F.3d at 16. Expressed in an alternate manner, the Commissioner's decision must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson*, *supra*, at 401, 91 S.Ct. 1420; *Rodriguez*, 647 F.2d at 222.

## II. ANALYSIS

Mr. Lopez Vargas was born on June 6, 1956. He has a second grade elementary

education and he is illiterate due to his inability to read and write. His past work experience consists of general agricultural labor and general construction laborer. Plaintiff was found to be disabled on October 10, 1991, and since then he has not participated in any gainful activity. Plaintiff's disability benefits were denied on April 1, 2001.

In the instant case, Plaintiff alleges that he suffers from the following conditions:

In addition to the impairments of diabetes mellitus, hypertension, fibromyalgia, and depression as found by the ALJ in his decision finding that the claimant's disability ceased on April 1, 2001, the evidence of record clearly establishes that the claimant also suffers from a bladder lesion (Tr. 130), chronic back pain, myeolopathy possibly due to disc herniation at L4–L5 and L5–S1 (Tr. 204), acquired central spinal canal stenosis at L4–L5, degenerative disc disease at L5–S1, suspected central herniated nucleus pulposes at L5–S1 level (Tr. 239), cervico lumbar miofascial syndrome, suspected HNP C5–C6, and L4–L5, depressive neurosis with anxiety (Tr. 376). Straightening of the lumbar lordosis, mild levoscoliosis, paravertebral muscle spasm, hypertrophic spondylotic changes seen throughout the lumbarspine along the L2–L3 and L3L4 interspace (Tr. 380), acute back pain and spinal pain which irradiated to the spinal column (Tr. 383), Urinary track infection (Tr. 393), cervical myositis (Tr. 403), displacement of C5 over C6, mild stenosis at C4–C5 and C5–C6 left intervertebral foramine, mild DJD of C2–C3 facet joints, lumbar myositis, mild narrowing of the L2–L3 and L3–L4 disc spaces with local spondylotic changes, mild lumbar levoscoliosis at L3–L4 (Tr. 440).

The medical evidence of record further establishes that the claimant also suffered from lumbar osteoarthritis with spasm, depression and insomnia, artralgia, suspected bilateral carpal tunnel syndrome (Tr. 479), panic attacks (Tr. 546) and vertigo (Tr. 568).

In a form filled out by the claimant's wife dated January 16, 2002 the claimant's wife indicated that the claimant had problems with his sight, speaking, hearing, comprehending, sitting, walking, standing, use of hands and arms, writing, reading, comprehending, responding and relating to people (Tr. 341, 343). The claimant's wife further indicated that the claimant also suffered with bouts of anger. That when the claimant falls into these bouts of anger he locks himself in his room and that bad and ill-thoughts come to his mind (Tr. 343).

*See* Docket No. 17, pg. 2–3.

While the Court understands that the evidence of record does establish that Mr. Lopez–Vargas suffered from a series of impairments, the ALJ's conclusions are found to be supported by substantial evidence on the record as a whole.

In order for Plaintiff to be entitled to benefits, he has to prove that he became disabled within the meaning of the Act. *See* Social Security Act, §§ 216(i)(1), 223(d)(1), as amended, 42 U.S.C.A. §§ 416(i)(1), 423(d)(1); *see also Deblois v. Secretary of HHS,* 686 F.2d 76, 79 (1st Cir.1982). If Plaintiff shows that he is unable to perform any substantial gainful work because of his medical condition expected to last for a continuous period of at least 12 months, then and only then will he be considered as disabled within the meaning of the Act. 42 U.S.C.A. §§ 416(i)(1), 423(d)(1); *see also See Guasp Goden v. Commissioner of Social Security,* 385 F.Supp.2d 154, 156 (2005). Furthermore, Plaintiff's impairments must be so severe that they prevent him not only from work-

ing in his previous occupation, "but in any other substantial gainful work considering his age, education, training, and work experience." *See Guasp Goden,* 385 F.Supp.2d at 156; *see also McDonald v. Secretary of Health and Human Services,* 795 F.2d 1118, 1120 (1st Cir.1986) ("A person is to be considered disabled only if 'his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy....' ") (*quoting* 42 U.S.C. § 423(d)(2)(A)). Therefore, since Plaintiff's impairments must preclude him from engaging in any substantial gainful work, mere evidence of a physical impairment will not be sufficient to be eligible for an award of disability insurance benefits. *See Guasp Goden,* 385 F.Supp.2d at 156 (*citing McDonald,* 795 F.2d at 1120).

In order to determine whether or not a claimant is disabled, one must consider all of the evidence in the record. 20 C.F.R. § 404.1520(a); *see also Berrios–Velez v. Barnhart,* 402 F.Supp.2d. 386, 390 (2005). Furthermore, a five-step evaluation process is to be utilized when making a final determination as to whether a claimant is disabled. 20 C.F.R. §§ 404.1520 ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step."); *see also Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *see also McDonald,* 795 F.2d at 1120.

The five steps followed by the Social Security Administration are the following:
(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (See paragraph (b) of this section.)
(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.)
(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (See paragraph (d) of this section.)
(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (See paragraph (f) of this section and § 404.1560(b).)
(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. (See paragraph (g) of this section and § 404.1560(c).)
*See* 20 C.F.R. §§ 404.1520(a)(4).

 If the claimant proves that his impairment is so severe that it precludes him from returning to his previous occupation, then the Commissioner has the burden of proving that there are other jobs in the economy that the claimant can perform. *See Ortiz v. Sec'y of Health and Human*

*Services,* 890 F.2d 520, 524 (1st Cir.1989) ("In cases where a nonexertional impairment significantly affects claimant's ability to perform the full range of jobs he is otherwise exertionally capable of performing, the Commissioner must carry his burden of proving the availability of jobs in the national economy by other means, typically through the use of a vocational expert.") (*internal quotations omitted*).

Plaintiff avers that "the Commissioner failed to adequately consider his limitations as well as his allegations of disabling pain." See Docket No. 17, pg. 7. Plaintiff further avers that although the evidence of record shows that he constantly complained of severe disabling pain, the Commissioner failed to give proper consideration to Plaintiffs complaints. Plaintiff states that although the ALJ did not find his pain credible and found that he retained a residual capacity to perform a full range of light work, the ALJ should have considered Plaintiff's complaints of pain as well as the treating source's conclusions. Plaintiff alleges that since the record is well documented with evidence in regards to his severe pains and their causes, the ALJ should have inquired about them and should have explored Plaintiff's responses to said pains. Plaintiff further alleges that since the ALJ is not a qualified medical expert, it was an error for the ALJ to base his conclusions on his own medical opinion, especially when the evidence of record does not support his conclusions. Plaintiff avers that the ALJ should have engaged a medical expert to consider and interpret the evidence of record and to evaluate Plaintiff's complaints. It is Plaintiff's contention that the evidence of record clearly shows a finding of disability. Plaintiff stated that his alleged severe pains coupled with his illiteracy limitation have caused a tremendous blow to his available occupational base.

■ "The findings of fact made by the ALJ 'are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matter entrusted to experts.'" *See Guasp Goden,* 385 F.Supp.2d at 156 *quoting Nguyen,* 172 F.3d at 35. Furthermore, "[t]he resolution of conflict in the evidence and the ultimate determination of disability are for the ALJ, not the Courts." *See Guasp Goden,* 385 F.Supp.2d at 156 (*citing Rodriguez,* 647 F.2d at 222).

Although the ALJ found that the medical evidence demonstrates that Plaintiff suffers from several impairments or a combination of impairments that are severe, he found that they are not severe enough to meet or equal the severity of the impairments listed in Appendix I, Subpart P, Regulations No. 4. As to Plaintiff's allegations of disabling pain, the ALJ found the following:

> The claimant has not been treated for an impairment which is capable of producing the intensity and the degree of pain alleged by him. His capacity to sit, stand, walk, and lift, or carry is not significantly restricted. He retains good range of motion of all major joints and limbs. His daily activities are not restricted as alleged and at the time of cessation of benefits, any prescribed or over the counter medication would provide adequate relief and control of his symptoms. It seems that his symptoms, including pain are exacerbated by strenuous activities. As long as he avoids such activities as heavy lifting or carrying, he is able to function normally. By no means is it intended to imply that he has no pain. However, his allegations of pain are credible only to the extent that strenuous activities can produce such symptoms. Thus, at the time of cessation of benefits on April 1, 2001, the

claimant retained a residual functional capacity compatible with a full range of like work.

*See* Tr. 25.

The ALJ further found that the medical evidence shows that Plaintiff has experienced an improvement in his medical conditions as of April 1, 2001, and that said improvement relates to his ability to work. He stated that the record is consistent with Plaintiff's medical improvements during April 1, 2001 and that it does not contain major discrepancies with Plaintiff's medical conditions. Notwithstanding, as to Plaintiff's treating psychiatrist, Dr. Karen Soto–Medina's reports, the ALJ stated that although all due deference was given, he could not afford controlling weight to them because Dr. Soto–Medina's findings of Plaintiff's mental status, are not consistent with the mental status findings of the rest of the record. Specially when Dr. Soto–Medina's first evaluation was held on October 19, 2001, after his disability benefits had ceased. The ALJ stated that "[t]he substantial evidence of the record shows that the claimant's psychiatric/mental treatment has been infrequent and that at the time of cessation of benefits, the claimant had improved medically, from both the physical and mental standpoints." (Tr. 23)

After carefully considering all the medical opinions in the record, the ALJ determined that the Plaintiff as of April 1, 2001, regained his residual functional capacity to perform exertional and nonexertional requirements of work except for lifting and or carrying more than 20 pounds. The ALJ also found that the Plaintiff could sit, stand and walk for about 6 hours, and that he had an unlimited capacity to push and pull as well as an unlimited capacity as to the operation of his hands and feet. Plaintiff could also occasionally climb, stoop, crouch and crawl. Although the ALJ found that the Plaintiff could not perform any of his past occupations (agricultural labor and general construction labor), taking into consideration his age, his illiteracy and his medical conditions, Plaintiff was found to be able to perform a significant range of **light work.**[1]

The ALJ stated that although Plaintiff's limitations do not allow him to perform a full range of light work, there are a significant amount of jobs in the national economy that he could perform. As to said

---

1. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy. These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor. In making disability determinations under this subpart, we use the following definitions:

 (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

 (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

 *See* 20 C.F.R. § 416.967.

available jobs, Mr. Luis Serrano, a vocation expert (VE), who testified in the hearing before the ALJ, stated that examples of routine repetitive simple work activities that he could perform were garment baggers, garment inspectors and spot cleaners. The VE stated that the aforementioned jobs were routine repetitive simple jobs which could be learned in thirty (30) days and where a person could alternate positions at will. They were also classified in terms of dexterity as unskilled and in terms of demand as light. The vocational expert further stated that regarding the spot cleaner job, there are about 1200 positions in the garment industry in Puerto Rico, and that specifically in Ciales, Puerto Rico, there were about 215. Regarding the garment bagger job, there are about 1000 positions in the garment industry in Puerto Rico and about 110 in the area. Regarding the garment inspector jog, there are about 1100 positions in the garment industry in Puerto Rico and about 100–110 in the area. Furthermore, the vocational expert stated that as to other routine repetitive simple work activities that the Plaintiff could perform there are for example clothes examiners and classifiers in the garment industry. Regarding the amount of positions in Puerto Rico, the vocational expert stated that there were about 1150 clothes examiners and about 1000 classifiers. Therefore, the ALJ concluded that when taking into consideration Plaintiff's age, educational background, work experience and residual functional capacity, Plaintiff was capable of making a successful adjustment to work, especially when there are a significant number of jobs in the national economy that he could perform. For said reasons, the ALJ found that Plaintiff was not disabled within the framework of Medical–Vocational Rule 202.16 of Table No. 2, Appendix 2, Subpart P of Regulations No. 4. Furthermore, the ALJ determined that although Plaintiff's limitations prevented him from returning to his previous occupations, Plaintiff's medical improvement as well as his residual functional capacity enabled him to perform other compatible jobs existing in substantial amounts in the economy. For said reason, the ALJ concluded that the Plaintiff was not disabled within the meaning of the Social Security Act.

After careful consideration of the record, it is the Court's contention that Plaintiff's averments lack merit. The ALJ determined that since Plaintiff's allegations of pain were credible only to the extent that they could be caused by strenuous activities, Plaintiff retained a residual functional capacity compatible with a full range of light work. The ALJ stated that aside from Plaintiff's allegations, the medical evidence was "unremarkable", that is that it failed to favor Plaintiff. He stated that "the record as a whole fails to specify any limitations arising out of the allegations, at the time of cessation of benefits." (Tr. 25). It is the Court's conclusion that there is substantial evidence in the record to support the ALJ's determination that Plaintiff's impairments did not preclude him from performing light work. Notwithstanding, the Court notes that the determination of issues of credibility and the drawing of inferences from the evidence of record, is not for the doctors or for the reviewing Courts, but for the ALJ. *See Irlanda Ortiz,* 955 F.2d at 769 (The Circuit Court found that although there was an "objective medical **impairment-a ruptured disc at L5–S1**–that [could] reasonably be expected to produce pain. [the Court] believe[d] the ALJ did not err in deciding that claimant's complaints were not credible to the extent alleged."); *see also; see also Lizotte,* 654 F.2d at 128; *Alvarado,* 511 F.2d at 1049.

Furthermore, it is for the Court a critical and determinative conclusion that the

ALJ did not base his conclusions on his own medical opinion as averred by the Plaintiff, the ALJ merely found that controlling weight could not have been given to Dr. Soto–Medina's findings of Plaintiff's mental status, due to the fact that they were not consistent with the mental status findings of the rest of the record. Specifically the ALJ stated that "based on the credible and substantial evidence of record, ... claimant's adjustment disorder with depressed mood did not significantly interfere with his functioning and within his activities of daily living as of the cessation date of April 1, 2001." It is the Court's contention that there is substantial evidence in the record to support the ALJ's determination that Plaintiff's adjustment disorder with depressed mood did not significantly interfere with his functioning and within his activities of daily living as of the cessation date of April 1, 2001. The Court briefly reviews the medical record:

*Dr. Karen L. Soto Medina,* evaluated the Plaintiff on October 19, 2001 (Tr. 612–613, Tr. 498–501) for the first time and found amongst other things that Plaintiff had a history of multiple somatic complaints, back pain, no pleasures, decreased appetite, decreased energy, forgetful and irritable. Dr. Soto Medina also found that although Plaintiff was in a depressed mood and superficial, he was fluent, had adequate speech and tone, he was relevant and coherent, and had adequate judgment and impulse control. **Nevertheless, Dr. Soto Medina stated that Plaintiff suffered from a major depressive disorder and high blood pressure.** Dr. Soto Medina found that Plaintiff had Global Assessment of Functioning **(GAF) rating of 40–45** and prescribed Zoloft and ordered several blood tests.

*Dr. Reinaldo Kianes,* a consulting psychiatrist, evaluated the Plaintiff on January 25, 2001. (Tr. 445–447). Dr. Kaines stated that Plaintiff complained about constant back pain and physical limitation due to his illness. Based on Plaintiff's history of present illness, Dr. Kianes found that the Plaintiff had no observable physical defects, he was well developed and nourished and had good personal hygiene (groomed, shaved, dressed with clean and proper clothes). Furthermore, Dr. Kaines found that the Plaintiff had sporadic eye contact and was cooperative, showed normal motor activity and gait, was alert, in contact with reality and understood the questions that were being asked. **Although Dr. Kaines found that the Plaintiff was mildly depressed,** he found that Plaintiff had a normal flow of ideas, didn't show any suicidal or homicidal ideas, nor delusions, phobias, obsessive nor persecutor ideas. Dr. Kaines also found Plaintiff to be coherent, relevant and logical. Dr. Kaines psychiatric diagnosis was that Plaintiff had an adjustment disorder with depressed mood, a mood disorder caused by a renal illness and learning disabilities. Dr. Kaines also found that Plaintiff was able to handle funds.

*Dr. Carlos Vazquez,* a DDS clinical psychologist, after completing a psychiatric review technic ("PRT") **found that the Plaintiff suffered from a slight depression.** (Tr. 458–472). Dr. Vazquez also found that Plaintiff's impairments were not severe, that his degree of limitation as to daily activities, maintaining a social functioning and in maintaining concentration, persistence or pace were **mild.** (The Court notes that the degree of limitation that satisfies the functional criterion is either "marked" or "extreme". (Tr. 469)). Dr. Vazquez further found that the Plaintiff had no episodes of decompensation.

*Dr. Giovanna C. Pietri,* a consulting psychiatrist, evaluated the Plaintiff on November 6, 2001. (Tr. 473–476). Dr. Pietri,

found amongst other medical findings that Plaintiff was well developed, well nourished, presented no deformities, had normal gait and coordination, presented no involuntary movements, no tremors, no tics nor mannerism and had good personal hygiene. **Dr. Pietri stated that Plaintiff's mood was euthymic.** Furthermore, Dr. Pietri found that the Plaintiff showed no obsessions, no compulsions and no phobias, he presented no ideas or references or delusions, he was not actively hallucinating and denied present suicidal and homicidal ideas. Dr. Pietri's diagnostic impression was that Plaintiff suffered from anxiety disorder, not otherwise specified, C2 discogenic, L4–L5 discogenic disease, high blood pressure and albuminuria. **Dr. Pietri found that Plaintiff had a past Global Assessment of Functioning (GAF) rating of 65 and a present GAF of 70.** Dr. Pieri concluded that Plaintiff had a good capacity for understanding, good memory and attention and that his concentration was undetermined (sic) undeterminable. **Plaintiff also had a good capacity for adaptation, task persistence and social interactions.** Furthermore, Plaintiff did not meet the criteria for panic disorder, his history and mental status examination did not show reveal acute affective symptoms, psychotic symptoms or behavioral disturbances. Dr. Pietri stated that Plaintiff had the ability to handle funds.

·[10] Of the four aforementioned physicians, only one, Dr. Soto–Medina, Plaintiff's treating physician[2], stated that the Plaintiff suffered from **major depressive disorder,** the rest stated that he suffered from **slight or mild depression, and/or an euthymic mood.** Therefore, of the four physicians, three are in tune with the ALJ's decision. Hence, the Court must apply the standard that when presented with "the not uncommon situation of conflicting medical evidence....[it is for t]he trier of fact[s] ... to solve ...". *See Richardson,* 402 U.S. at 399, 91 S.Ct. 1420 (*emphasis ours* ). The ALJ's resolution must be affirmed "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence". *See Rodriguez Pagan v. Secretary of Health and Human Services,* 819 F.2d 1, 3 (1st Cir.1987); *see also Irlanda Ortiz,* 955 F.2d at 770 ("Although the record arguably could support a different conclusion, we believe there is substantial evidence to support the Secretary's decision that claimant's capacity for the full range of such work was not significantly reduced. Thus, we must uphold his decision.") (*citing Rodriguez Pagan,* 819 F.2d at 3).

Furthermore, Dr. Jorge Davila Velez, a neurologist, evaluated the Plaintiff on February 13, 1997. (Tr. 374–379). He stated that Plaintiff complained about not being able to sit, stand or walk for over an hour, that he could not bend forward, squat, crouch, crawl, stoop or kneel for any significant length of time nor carry any weight that exceeds 12–14 pounds. Plaintiff also stated that he was very nervous, depressed and suffered from insomnia and amnesia. His diagnostic impression was that Plaintiff suffered from cervico lumbar miofascial syndrome, sosp. HNP C5–C6 and L4–L5, and depressive neurosis with anxiety. Notwithstanding, Dr. Ruddy Guerra, a neurologist, who examined Plaintiff on January 17, 2001 (Tr. 435–444), stated that his diagnosis impression was that although the Plaintiff

**2.** *See Vega–Morales v. Commissioner of Social Security,* 380 F.Supp.2d 54, 59 (D.P.R.20055) ("[T]reating physicians 'are not entitled to greater weight merely because they are treating physicians' as compared with a consulting physician's opinion.") (*emphasis ours* ) (*citing Rodriguez Pagan v. Secretary of Health and Human Services,* 819 F.2d 1, 3 (1st Cir.1987)).

suffered from cervical, dorsal and lumbar pain, he did not suffer from singes of nerve root or peripheral nerve irritability, weakness, numbness or atrophy. Dr. Guerra further found that Plaintiff was not expected to have **"neuromuscular limitations for sitting, standing, walking or carrying."** (Tr. 435) (*emphasis ours*). Dr. Guerra gave the Plaintiff a "guarded" prognosis. (Tr. 435). When comparing both neurologists' evaluations it is evident that regarding Plaintiff's range of motion of the joints, if not all then most, show an improvement from when Dr. Davila Velez evaluated him to when Dr. Guerra evaluated him.[3] (Tr. 377–380 & Tr. 437–439).

Moreover, on February 19, 2001, a DDS internist performed a physical residual functional capacity assessment of Plaintiff and found that he could **occasionally** lift and carry (including upward pulling) 20 pounds, **frequently** lift and carry (including upward polling) 10 pounds, stand and/or walk with normal breaks, **for about 6 hours** in an 8 hour working day and push and/or pull without limitations. Furthermore, it was found that Plaintiff could occasionally climb (ramps, stairs, ladders, ropes, scaffolds), stoop, crouch, and crawl, and could frequently balance and kneel.[4]

 The Court's conclusion is that there is substantial evidence in the record to support the ALJ's determination that Plaintiff has experienced an improvement in his medical conditions as of April 1, 2001, and that said improvement relates to his ability to work, therefore regaining his residual functional capacity to perform exertional and nonexertional requirements within a significant range of **light work.** The Court reiterates the fact that "Courts are not to re-weight the evidence or substitute their judgment for that of the Commissioner when the record before the administrative agency has been comprehensive and thorough" as in the instant case. *See Quinones Arce v. Commissioner of Social Security*, 274 F.Supp.2d 143, 145 (2003). "The issue to be considered by the Court in this kind of cases is whether the decision of the ALJ is supported by substantial evidence, which has been defined as 'more than a mere scintilla' and such as a reasonable mind might accept as adequate to support a conclusion." *See Id.*, (*quoting Richardson*, 402 U.S. at 401, 91 S.Ct. 1420); *see also Colon v. Secretary of Health & Human Serv.*, 877 F.2d 148 (1st Cir.1989).

For the reasons stated above the Court concludes that the ALJ provided explicit and detailed findings in support of his determinations, allowing this Court to affirm that the ALJ's decision is in fact supported by substantial evidence on the record as a whole. Therefore, the ALJ's determination that claimant failed to establish that he was disabled within the meaning of the Social Security Act, is hereby **AFFIRMED.**

---

**3.** The Court notes that Dr. Davial Velez' evaluation was performed on February 13, 1997 when Plaintiff was still found to be disabled under the Act and Dr. Guerra's evaluation was performed on January 17, 2001, closer to the date when Plaintiff's disability benefits ceased.

**4.** "**Frequently** means occurring one-third to two-thirds of an 8–hour workday (cumulative, not continuous). **Occasionally** means occurring from very little up to one-third of an 8– hour workday (cumulative, not continuous)." *See* Tr. 450 (*emphasis on original*). Furthermore, the Court notes that when assessments like this one which are performed by a non-examining physician, are taken into consideration, together with other consultative examining physician reports, provide substantial evidence to support an ALJ's ultimate decision. *See Berrios Lopez*, 951 F.2d at 431–432; *see also Rodriguez*, 647 F.2d at 223.

### III. CONCLUSION

The Court, therefore **AFFIRMS** the Commissioner's decision denying Plaintiff's insurance benefits. This case is **CLOSED.** Judgment shall be entered accordingly.

**IT IS SO ORDERED AMENDING NUNC PRO TUNC OPINION & ORDER DATED MARCH 30th 2007.**